UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAVE MAN KITCHENS INC.,

                Plaintiff,

    v.

CAVEMAN FOODS, LLC,

                Defendant.

No. 2:18-cv-01274 RAJ

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY TRANSFER VENUE FOR FORUM NON CONVENIENS**

       This matter comes before the Court on Defendant's Motion to Dismiss or Alternatively Transfer Venue (Dkt. # 13). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons stated below, Defendant's Motion (Dkt. # 13) is DENIED.

## I.    BACKGROUND

       The following is taken from Cave Man Kitchens' Complaint, which is assumed to be true for the purposes of this motion to dismiss, declarations provided by both parties, as well as other documents that have been judicially noticed as noted below. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the

ORDER- 1

pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

Cave Man Kitchens, Inc. ("Plaintiff" or "Cave Man Kitchens") is a Washington-based corporation that provides restaurant, food preparation, and catering services. Dkt. # 1 at 2. Since 1971, Plaintiff's "predecessor in interest" Cave Man Kitchens, Inc. (the "former Cave Man Kitchens") has used the terms CAVE MAN and CAVEMAN for its restaurant and catering services in Washington. On March 1, 2011, the former Cave Man Kitchens filed for bankruptcy (Dkt. #17, Ex. A.) and Plaintiff subsequently incorporated under the same name, Cave Man Kitchens, Inc.. Dkt. # 1 at ¶ 7. Plaintiff also "became the owner by assignment of the Trademarks, Service Marks, Trade Dress and/or domain names" and goodwill of the former Cave Man Kitchens. *Id.* Since then, Plaintiff has continued to operate from "substantially the same location in Kent, Washington" using the marks CAVEMAN, CAVEMAN KITCHEN, and CAVE MAN KITCHENS in connection with its products and services. *Id.* Plaintiff is currently the owner of the CAVE MAN KITCHENS mark (Registration No. 3222887), effective March 27, 2011, and has pending applications with the Unites States Patent and Trademark Office ("USPTO") for the CAVEMAN KITCHEN (Application No. 86955705) and CAVEMAN (Application No. 86966805) marks. Dkt. # 1 at ¶¶ 7-9.

Defendant Caveman Foods ("Defendant" or "Caveman Foods") is a California-based company that manufactures and sells a "variety of ready-to-eat food products…" Dkt. # 1 at ¶ 4. According to Plaintiff, Caveman Foods knowingly adopted the CAVEMAN mark "as the central element of its own name and mark for use on goods and services substantially similar to those of Cave Man Kitchens" and distributed those goods and services through "substantially the same channels of trade and to the same types of consumers as those of Cave Man Kitchens." *Id.* at ¶ 17. Caveman Foods, for its part, also maintains trademark registrations for CAVEMAN FOODS (Registration No. 4863604), CAVEMAN JERKY (Registration No. 4841590), and CAVEMAN

ORDER-2

FOODS (Registration No. 4565451) and has active applications for other CAVEMAN marks pending before the USPTO.  Dkt. # 2-2, Ex. C; Dkt. # 2-2, Ex. D.

The procedural history of this dispute is complicated.  On May 8, 2017, Cave Man Kitchens filed a petition to cancel Caveman Foods' trademark registrations for the CAVEMAN FOODS and CAVEMAN JERKY marks.  Dkt. # 1 at ¶ 13.  Cave Man Kitchens also filed opposition to Caveman Foods' application for the other CAVE MAN marks.  *Id.* at ¶ 14.  Caveman Foods responded by filing a petition to cancel Cave Man Kitchens' registration for the CAVE MAN KITCHENS mark and opposition to Cave Man Kitchens' pending applications for the CAVEMAN KITCHEN and CAVEMAN marks.  *Id.* at ¶¶ 15-16.

On February 22, 2018, Cave Man Kitchens brought suit against Caveman Foods in the Western District of Washington, alleging trademark infringement (*Cave Man Kitchens, Inc. v. Caveman Foods, LLC,* No. 2:18-cv-00273-TSZ (W.D. Wa.)).  Dkt. # 17, Ex. J.  During the discovery process, Caveman Foods realized that Cave Man Kitchens did not actually own the CAVE MAN KITCHENS registration that its complaint was based on – the mark was actually owned by the former Cave Man Kitchens, Inc. (now dissolved).  Dkt. # 17, Ex. K.  Caveman Foods filed a motion to dismiss for lack of standing, lack of personal jurisdiction, or in the alternative a motion to transfer venue.  *Id.*  On May 30, 2018, while Caveman Foods' motion was still pending, Cave Man Kitchens obtained a *nunc pro tunc* assignment of the CAVE MAN KITCHENS mark from its predecessor in interest (the former Cave Man Kitchens Inc.). Dkt. # 17, Ex. L.  The assignment indicates that it is effective June 6, 2011.  *Id.*

Although the *nunc pro tunc* assignment applied retroactively and purportedly corrected the standing defect, on August 28, 2018, the Honorable Thomas S. Zilly dismissed Cave Man Kitchens' complaint noting that at the time Cave Man Kitchens initially filed the complaint, it did not own the rights to the CAVE MAN KITCHENS registration. Dkt. # 17, Ex. M.  That same day, at 5:28 PM, Caveman Foods sued Cave

ORDER-3

Man Kitchens in the Northern District of California (*Caveman Foods, LLC v. Cave Man Kitchens, Inc.,* No 4:18-cv-05289 (N.D. Cal.)). Dkt. # 17, Ex. N. Shortly after Caveman Foods filed its complaint in the Northern District of California, Cave Man Kitchens re-filed its complaint in this Court. Dkt. # 1.

Caveman Foods now moves to dismiss Cave Man Kitchens' complaint arguing that under the first-to-file rule, Caveman Foods' complaint in the Northern District of California was filed first and this action should be stayed or dismissed in favor of the California action. Dkt. # 13 at 3. Alternatively, Caveman Foods argues that Cave Man Kitchens' complaint should be dismissed for lack of personal jurisdiction or transferred to the Northern District of California on *forum non conveniens* grounds. *Id.*

## II.    JUDICIAL NOTICE

Defendant asks the Court to take judicial notice of 16 documents in support of its motion to dismiss. Dkt. # 17; Dkt. # 28. The documents fall into three categories: (1) dockets and filings from previous court proceedings, including former Cave Man Kitchens' bankruptcy court filings, (2) U.S. Patent and Trademark Office records for Caveman Foods and Cave Man Kitchens, and (3) public records filed with the Secretaries of State for California and Washington (collectively the "Exhibits"). On a motion to dismiss, the Court typically considers only the contents of the complaint. However, the Court is permitted to take judicial notice of facts that are "not subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). It is well established that the Court may take judicial notice of court filings, including bankruptcy court filings. *See Otter v. Northland Grp., Inc*., No. 12-2034-RSM, 2013 WL 2243874, at *1 (W.D. Wash. May 21, 2013) (granting request for judicial notice of documents filed in bankruptcy court). The Court may also take judicial notice of "authentic documents recorded with a governmental agency." *Gelinas v. U.S. Bank, NA*, No. 16-1468-JLR, 2017 WL 553277, at *3 (W.D. Wash. Feb. 10, 2017). This

ORDER-4

includes public records filed with the U.S. Patent and Trademark Office or the Secretary of State. See *Oroamerica Inc. v. D & W Jewelry Co.*, 10 F. App'x 516, 517, n.4 (9th Cir. 2001) (granting request for judicial notice of public records filed with the U.S. Patent and Trademark Office); *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (granting request for judicial notice of public records kept by the Secretary of State). Plaintiff does not challenge Defendant's request for judicial notice. Accordingly, the Court will take judicial notice of the Exhibits as they are all court filings or matters of public record from government entities.

## III. DISCUSSION

### A. **First-to-File Rule**

The "first-to-file" rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). Courts may consider several factors when determining whether to dismiss or stay an action based on the first-to-file rule including the chronology, whether the parties are substantially similar, and whether the claims are substantially similar. *Alltrade, Inc. v. Uniwield Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991). Here, because it appears the parties, claims, and defenses are nearly identical across the relevant actions, the Court will focus on the chronology of the cases.

Defendant argues that the Court should grant its motion to dismiss under the first-to-file rule because it filed its complaint in the Northern District of California before Plaintiff re-filed its complaint in this district. Dkt. # 13 at 7-8. Defendant further argues that Plaintiff's initial February action before Judge Zilly cannot be considered first-filed because the action was no longer pending at the time Defendant filed in the Northern District of California. Dkt. # 27 at 8-9.

ORDER-5

While Defendant's California action may have technically been filed first, the first-to-file rule is "not a rigid or inflexible rule to be mechanically applied" and a district court enjoys an "ample degree of discretion" in applying the rule. *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 95 (9th Cir. 1982) (internal citation omitted). Several district courts have found that an action is considered to have been first filed, even if it was not chronologically filed first, where the claims "relate back" to the original complaint. *See e.g. Halo Elecs., Inc. v. Bel Fuse Inc.,* No. C-07-06222 RMW*,* 2008 WL 1991094, at \*2 (N.D. Cal. May 5, 2008) ("An action is considered to have been the first filed, even if it was not chronologically first, if the claims relate back to an original complaint that was chronologically filed first."); *Adobe Sys. Inc. v. Bargain Software Shop, LLC*, No. C-14-3721 EMC, 2014 WL 6982515, at \*2 (N.D. Cal. Dec. 8, 2014) (applying first-filed status to a case previously dismissed for improperly joined parties without prejudice where plaintiff refiled in the same district after unsuccessful negotiations).

The district court's decision in *Activision*, is particularly instructive. *See Activision Blizzard Inc. v. Acceleration Bay LLC*, No. 16-CV-03375-RS, 2016 WL 4548985 (N.D. Cal. Sept. 1, 2016). In that case, the plaintiff initially filed patent infringement complaints in the District of Delaware. *Id.* at \*4. The defendants moved to dismiss based on a standing defect and the court indicated that the complaints would be dismissed if plaintiff did not correct the standing defect. *Id.* at \*2. Although the plaintiff subsequently corrected the standing defect, defendants filed suit in the Northern District of California seeking a declaratory judgment of non-infringement related to the same claims and defenses detailed in the plaintiff's Delaware actions. *Id*. The following day, plaintiff requested that the 2015 Delaware actions be dismissed without prejudice and immediately filed a new complaint, alleging similar claims and defenses. *Id*. The defendants argued that plaintiff's second complaint should be dismissed because their California action was filed before plaintiff's second Delaware complaint.

ORDER-6

*Id.* at *4. The court in the Northern District of California rejected the defendants' argument, holding that plaintiff's amended Delaware complaint effectively related back to the initial Delaware complaints and thus was the first-filed action. *Id*. at *5.

Here, as in *Activision,* Plaintiff corrected the standing defect while litigation was still pending. Although Plaintiff's initial complaint was still dismissed because Plaintiff did not have standing at the time the action was originally filed, Plaintiff immediately re-filed its complaint alleging similar facts, claims, and defenses. *Compare* Dkt. # 17, Ex. J, *with* Dkt. # 1. Accordingly, because Plaintiff's complaint effectively amended its initial February complaint, the Court finds that the complaint "relates back"[1] and Plaintiff's August 2018 action should be considered first-filed.

Even if the California action were deemed the first-filed, that action appears to be an anticipatory suit. While the Court cannot speculate as to Defendant's motives for filing a complaint in another district almost immediately following the issuance of Judge Zilly's order, the timing of the action is suspect. "An action is anticipatory when the plaintiff files it after receiving 'specific, concrete indications that a suit by the defendant is imminent.'" *Topics Entm't Inc. v. Rosetta Stone Ltd.*, No. C09-1408RSL, 2010 WL 55900, at *3 (W.D. Wash. Jan. 4, 2010) (internal citations omitted). Anticipatory suits are "disfavored because they are examples of forum shopping." *Id.*

In this case, Defendant had specific, concrete indications that a suit was not only imminent but that the action would be a continuation of the then-pending litigation in Washington. Prior to filing suit in California, Defendant was actively defending against Plaintiff's suit in Washington – a suit that was only dismissed for a standing defect Defendant *knew* Plaintiff corrected before it was dismissed. The fact that "no settlement negotiations were deterred by the filing of the California action" is not dispositive. Dkt. #27 at 6. The Court finds it highly unlikely that Defendant did not anticipate that

---

[1] While the Court recognizes that Fed. R. Civ. P. 15 does not technically apply in this instance, the facts of the case justify the same result.

ORDER-7

Plaintiff would refile its complaint, without the standing defect, following Judge Zilly's dismissal order. And, as Plaintiff notes, this is not Defendant's first attempt to move this dispute back to the Northern District of California. Dkt. # 26 at 6. While the Court is sympathetic to Defendant's desire to move this case to California, blatant forum shopping will not be permitted. The Court DENIES Defendant's Motion to Dismiss under the First-to-File Rule.

### B. Personal Jurisdiction

In a case like this one where no federal statute governs personal jurisdiction, the court's jurisdictional analysis starts with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir.2002). Washington's long-arm statute (RCW § 4.28.185) extends personal jurisdiction to the broadest reach that the Due Process Clause of the federal Constitution permits. *Shute v. Carnival Cruise Lines,* 113 Wash. 2d 763, 771 (1989). Plaintiff has the burden of establishing personal jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). "It is well established that where the district court relies solely on affidavits and discovery materials, the plaintiff need only establish a *prima facie* case of jurisdiction." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n.3 (9th Cir. 1993). In determining whether Plaintiff has met this burden, any "uncontroverted allegations" in Plaintiff's complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996), *supplemented*, 95 F.3d 1156 (9th Cir. 1996) (internal citations omitted).

There are two types of personal jurisdiction: general and specific. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction, and can be haled into court on any action, even one

ORDER-8

unrelated to its contacts in the state. *Bancroft & Masters*, 223 F.3d at 1086. A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts with the forum state. *Id*. Plaintiff does not assert that Defendant is subject to general jurisdiction, so the Court will only consider whether the Defendant is subject to specific jurisdiction.

The Court applies a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). The burden then shifts to defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

### 1. *Purposeful Direction*

Purposeful availment and purposeful direction are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. In the Ninth Circuit, tort cases typically require a purposeful direction analysis, whereas contract cases typically require a purposeful availment analysis. *Washington Shoe Co. v. A–Z Sporting Goods, Inc.,* 704 F.3d 668, 672–73 (9th Cir.2012). Here, Plaintiff is alleging trademark infringement, so the Court will apply the purposeful direction analysis. *See Aweida Arts, Inc. v. Pure Glass Distribution*, Inc., 157 F. Supp. 3d 929, 935 (W.D. Wash. 2015) (applying purposeful direction analysis to trademark infringement case).

The "purposeful direction" or "effects" test is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). Under the "effects" test the defendant must have allegedly, "(1) committed an intentional act, (2) expressly aimed at the forum

ORDER-9

state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) (internal quotation marks omitted).

### a. Intentional act

The Court will first consider whether the defendant committed an "intentional act" when it allegedly infringed upon Plaintiff's trademark. "[A]n intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe* at 674. Plaintiff alleges that Defendant adopted the allegedly infringing "CAVEMAN" mark as a "central element of its own name" and distributed "goods and services substantially similar to those of Cave Man Kitchens," throughout the State of Washington. Dkt. # 1 at ¶ 4, ¶ 17-25. Here, Defendant clearly intended to label its goods and services with the allegedly infringing "CAVEMAN" mark. This is sufficient to establish an "intentional act" under the "effects" test. *Schwarzenegger,* 374 F.3d at 806 (defining intent as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."). This should not, however, be conflated with a finding that the defendant acted "willfully" as defined under trademark law. *Schwarzenegger*, 374 F.3d at 806 ("Intentional act" has a specialized meaning in the context of the *Calder* effects test.).

### b. Expressly aimed at forum state

The second prong of the "effects" test considers whether the defendant's actions were expressly aimed at the forum state. To satisfy the "express aiming" standard, Plaintiff must show that Defendant's actions, even if taking place outside Washington, were expressly aimed at Washington. *Id.* In *Brayton Purcell*, the Ninth Circuit reiterated that this element requires "something more" than mere foreseeability to justify the assertion of personal jurisdiction. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (citing *Schwarzenegger*, 374 F.3d at

ORDER-10

805).  The Ninth Circuit has considered various factors in determining whether "something more" exists, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (internal citations omitted).  "Express aiming can [also] be shown where a corporation 'continuously and deliberately' exploits the forum state's market for its own commercial gain."  *Mavrix*, 647 F.3d at 1229–30.

Here, Washington accounts for 10% of Defendant's overall business.  Dkt. # 15 at ¶ 13.  Defendant maintains a website from which Washington consumers can purchase its goods and also sells its products directly to at least one Washington-based distributor.  *Id*.  Defendant admits these facts (Dkt. # 15 at ¶ 13), but argues that these sales were merely "incidental" through its website and its wholesales or distributors who "coincidentally sold to residents in Washington."  Dkt. # 13 at 13.  The Court is unconvinced.  The sale of Caveman Foods' products in Washington is not "coincidental" but rather a predictable consequence of Defendant's business model.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[I]f the sale of a product of a manufacturer or distributor … is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States …").  The fact that these sales are merely part of Defendant's national business does not detract from its exploitation of the Washington market for its own commercial gain.  *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984) (holding regular circulation of 10,000 magazines each month in the forum state was sufficient to establish specific jurisdiction because regular monthly sales of a substantial number of magazines could not be random, isolated, or fortuitous).

ORDER-11

Plaintiff also alleges that Defendant was aware of Plaintiff's use of the CAVE MAN KITCHENS mark as early as March 6, 2017, when Caveman Foods sent a letter to Cave Man Kitchens' counsel in Seattle, requesting information regarding Cave Man Kitchens' use of the CAVEMAN mark. Dkt. # 26-4, Ex. B. The Ninth Circuit has repeatedly held that the express aiming requirement is satisfied "when defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Wash. Shoe. C*o., 704 F.3d at 675 (internal quotation marks and citations omitted); *Fiore v. Walden*, 688 F.3d 558, 577 (9th Cir. 2012) ("In general, where there was 'individual targeting' of forum residents—actions taken outside the forum state for the purpose of affecting a particular forum resident or a person with strong forum connections—we have held the express aiming requirement satisfied."). While such letters, in isolation, are generally insufficient to confer personal jurisdiction, when considered in addition to Defendant's other contacts with Washington, this supports a finding of specific jurisdiction. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1201 (9th Cir. 2006) (finding a cease and desist letter in addition to other contacts with the forum state warranted an exercise of personal jurisdiction). In sum, the Court finds that Defendant's continuous and deliberate exploitation of the Washington market, a state Defendant appears to have known Plaintiff was a resident of, is sufficient to satisfy the "express aiming" requirement. *See Paramount Farms Int'l LLC v. R.A.W. Real & Wonderful, LLC,* No. CV 14-581 GAF (VBKX), 2014 WL 12597157, at *4 (C.D. Cal. Apr. 4, 2014) (finding personal jurisdiction where defendant sold 576 bags of products to distributors and consumers in California, where plaintiff was headquartered); *see also Oakley, Inc. v. Donofrio,* No. SACV1202191CJCRNBX, 2013 WL 12126017, at *7 (C.D. Cal. June 14, 2013) (finding personal jurisdiction where the defendant actively shipped products to California residents via eBay.com, with knowledge of Plaintiff's presence in California).

ORDER-12

c. Causing harm in the forum state

Finally, the Court must consider whether the defendant's actions "cause harm …
which the defendant knows is likely to be suffered" in Washington. *Yahoo,* 433 F.3d at
1206 (internal citation omitted). Resolving the facts in favor of Cave Man Kitchens, the
Court finds that it is foreseeable that Cave Man Kitchens would be harmed by
infringement of its trademarks and that, given Defendant's sales in Washington, this
harm would occur in Washington. The Court concludes that Cave Man Kitchens has
presented a *prima facie* case of purposeful direction by Caveman Foods sufficient to
survive a motion to dismiss for lack of personal jurisdiction.

*2. Arising Out Of*

The Ninth Circuit has adopted a "but for" analysis to determine whether the
claims at issue arose from a defendant's forum-related conduct. *Menken v. Emm*, 503
F.3d 1050, 1058 (9th Cir. 2007). "[T]he plaintiff's claim must be one which arises out
of or relates to the defendant's forum-related activities." *Id*. Cave Man Kitchens
alleges that Caveman Foods willfully infringed upon its right to the CAVEMAN mark
and sold goods and services bearing the CAVEMAN mark in Washington, resulting in
consumer confusion and harm to Cave Man Kitchens' business and goodwill. Dkt. #1.
Setting aside any disputes as to whether or not Defendant infringed upon Plaintiff's
right to the CAVEMAN marks, it is clear that Plaintiff would not have suffered the
alleged injury "but for" Caveman Foods' alleged infringement.

*3. Exercise of Jurisdiction is Reasonable*

As Plaintiff has satisfied the first two prongs required to establish specific
jurisdiction, the burden shifts to Defendant to make a "compelling case" that exercise of
jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802. There are seven
factors a court must consider when determining whether exercise of jurisdiction is
reasonable: "(1) the extent of the defendants' purposeful interjection into the forum
state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent

ORDER-13

of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).

Some of these factors favor the Defendant while others favor the Plaintiff. Defendant's purposeful interjection in Washington (by allegedly engaging in willful infringement of a Seattle entity's mark) was not extensive but was nonetheless significant. The Court is not convinced that defending this case in Washington would be substantially more burdensome on the Defendant than litigating the case in California. "[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004). There is no conflict with California law and Washington has a legitimate interest in protecting the intellectual property rights of its residents. To the extent that the location of the forum impacts judicial efficiency, that factor favors resolution in Washington. The suit is already here (as was Plaintiff's previous suit) and some of Plaintiff's claims are based in Washington law. The Court does not find Washington particularly important or unimportant to Plaintiff's interest in obtaining convenient and effective relief. Finally, while the Court acknowledges that Defendant has filed another anticipatory suit in the Northern District of California, the action currently pending before this Court is the first filed suit and the existence of an alternative forum should not weigh against this Court's exercise of jurisdiction. The Court finds that Defendant falls short of establishing a "compelling" case that the Court's exercise of personal jurisdiction would be unreasonable. Accordingly, the Court DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

ORDER-14

## C. Venue

As an alternative to its request that the court dismiss this case for lack of personal jurisdiction, Defendant asks the Court to transfer venue to the Northern District of California under 28 U.S.C. § 1404. Under section 1404(a), the court "may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In ruling on a motion to transfer, the Court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) (internal citation omitted). A defendant seeking transfer must make a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Id.* Courts consider several factors when determining whether to transfer venue, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2000).

Only a few factors favor the Defendant. It appears Defendant has no contacts with Washington beyond those described in the personal jurisdiction analysis above. In addition, most of the Defendant's witnesses are located in California. The remaining factors, however, either favor no party or favor Plaintiff. Neither federal forum is more familiar with the Lanham Act, and this Court is more familiar with Plaintiff's claims based on Washington law. Plaintiff chose this forum, and there is no evidence that it has significant contacts with California. Even if there is more documentary evidence in California than in Washington, the Court finds that consideration insignificant. Modern

ORDER-15

technology tends to make access to documentary proof easy from virtually any location, and there is no evidence that access to documentary proof in California will impose a burden on any party. There is no evidence that the cost of litigating this suit in Washington is meaningfully different than the cost of litigating it in California. To the extent that public policy considerations favor either party, they favor Washington's policy interest in protecting the intellectual property of its residents. Guided by these factors, the Court finds that the interests of justice do not warrant transferring this action to the Northern District of California. Accordingly, the Court DENIES Defendant's Motion to Transfer Venue.

## I. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or Alternatively Transfer Venue is **DENIED.** Dkt. #13.

DATED this 19th day of August, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER-16