1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

CAVE MAN KITCHENS INC.,

8                          Plaintiff,

9          v.                                          C18-1274 TSZ

10    CAVEMAN FOODS LLC,                               ORDER

11                          Defendant.

12         THIS MATTER comes before the Court on Defendant Caveman Foods LLC's

13   Motion for Summary Judgment, docket no. 103, and Defendant's Motion Requesting

14   Judicial Notice, docket no. 112.[1]  Having reviewed all papers filed in support of, and in

15   opposition to, the motions, the Court enters the following Order.

16   **Background**

17   **A.     Plaintiff Cave Man Kitchen Inc.'s Trademarks**

18         In 1971, Richard Donley ("Richard"), the father of Plaintiff Cave Man Kitchen

19   Inc.'s president, Roseanna Donley ("Roseanna"), cofounded a restaurant under the name

20

21   ――――――――――――――

22   [1] Defendant's motion requesting judicial notice of matters of public record, docket no. 112, is
     GRANTED.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

23

ORDER - 1

1    Cave Man Kitchens in Kent, Washington.  Roseanna Decl. at ¶ 3 (C18-273, docket

2    no. 18-1).  Richard later became the sole owner of the restaurant, which he organized as a

3    Washington corporation with Unified Business Identification ("UBI") No. 600-625-485.

4    *Id.* at ¶¶ 3–4.  Roseanna later became a shareholder of that corporation and served on its

5    board of directors.  *Id.* at ¶ 4.

6         On June 2, 2006, the directors of Cave Man Kitchens Inc. filed a trademark

7    application for the mark CAVE MAN KITCHENS with the United States Patent and

8    Trademark Office ("PTO").  Certificate for Registration No. 3,222,887, Ex. M to

9    Williams Decl. (docket no. 114-2).  Four days later, a majority of the corporation's

10   directors voted to remove Roseanna from the board.  Roseanna Dep., Ex. A to Williams

11   Decl. (docket no. 113-1 at 64–65).  Roseanna remained a 20 percent shareholder of the

12   corporation.  *Id.* at 85.

13        In 2010, Cave Man Kitchens Inc. unsuccessfully sought discharge in bankruptcy,[2]

14   and in March 2011, the Washington Secretary of State administratively dissolved the

15   corporation (hereinafter referred to as "Dissolved Cave Man Kitchens").  Roseanna Decl.

16   at ¶ 5 (C18-273, docket no. 18-1).  In April 2011, Roseanna's niece, Marlis Hill

17   ("Marlis"), purchased Dissolved Cave Man Kitchens from the former directors, and

18   started operating the restaurant at the same location, but under the name CK

19   Smokehouse.  *Id.* at ¶ 6; Roseanna Dep., Ex. A to Williams Decl. (docket no. 113-1 at 5);

20   _____

21   [2] The registered mark CAVE MAN KITCHENS was not disclosed as an asset in the bankruptcy
     proceedings.  *See* Gove Dep., Ex. G to Williams Decl. (docket no. 113-7 at 17–18); Bankruptcy

22   Schedules, Ex. O to Williams Decl. (docket no. 114-4).

23

ORDER - 2

1    Marlis Dep., Ex. D to Williams Decl. (docket no. 113-4 at 6–7).  The "CK" stood for

2    "Caveman Kitchens," and the public continued to refer to the restaurant by the name

3    Cave Man Kitchens; a restaurant wall and the company vans also continued to bear the

4    name Cave Man Kitchens.  Roseanna Decl. at ¶ 6 (C18-273, docket no. 18-1); Roseanna

5    Dep., Ex. A to Williams Decl. (docket no. 113-1 at 5).

6            On June 6, 2011, Roseanna registered a new Washington corporation under the

7    original name of her family's restaurant, Cave Man Kitchens Inc., which was assigned

8    UBI No. 603-118-420.  Roseanna Decl. at ¶¶ 1, 7 (C18-273, docket no. 18-1).  Later that

9    year, Roseanna took over the CK Smokehouse restaurant from Marlis.  *Id.* at ¶ 7.  At

10   some point in early 2012, Roseanna started operating the restaurant at its original location

11   and under its original name, Cave Man Kitchens.  *Id.*  To date, Roseanna has continued to

12   operate the restaurant under that name or similar names, including Cave Man Kitchen,

13   Caveman Kitchen, Cave Man, and Caveman.  *Id.*  Since Roseanna started operating the

14   restaurant under the name Cave Man Kitchens, none of the former directors of Dissolved

15   Cave Man Kitchens have contested her use of the name.  *Id.* at ¶ 8.

16           In 2013 and 2016, Roseanna filed renewal applications for the registered mark

17   CAVE MAN KITCHENS, originally registered to Dissolved Cave Man Kitchens.

18   Registration Summary, Ex. DD to Williams Decl. (docket no. 115-3 at 3, 12, 22).[3]

19   Roseanna also filed, on behalf of Plaintiff, applications for two other marks, CAVEMAN

20

21   _____

22   [3] The Court also takes judicial notice of the public summary of the parties' opposition proceedings in the
     PTO, available at https://ttabvue.uspto.gov/ttabvue/v?pno=91234111&pty=OPP.

23

1    KITCHEN (Serial No. 86,955,705 filed on March 28, 2016) and CAVEMAN (Serial No.

2    86,966,805 filed on April 6, 2016).  *See id.* at 4–6; *see supra* note 3.

3           On May 30, 2018, the former president of Dissolved Cave Man Kitchens (and

4    Roseanna's sister), Patricia Hill ("Patricia"), signed a *nunc pro tunc* assignment

5    transferring the entire interest and goodwill in the registered mark CAVE MAN

6    KITCHENS to Plaintiff, which purported to make the transfer effective on June 6, 2011.

7    Assignment, Ex. A to Stuart Decl. (C18-273, docket no. 18-3 at 2–3).  When Patricia was

8    asked about the significance of the effective date, June 6, 2011, she testified that it "was

9    basically around the time when [Patricia] said [to Roseanna] . . . It's yours now. . . .  go

10   for it. . . .  Whatever you can do, it's open, it's ready, and you have to keep it going."

11   Patricia Dep., Ex. A to Durrance Decl. (docket no. 122-1 at 6).

12   **B.    Defendant Caveman Foods LLC's Trademarks**

13          In 2001, Defendant Caveman Foods LLC's assignor, Bob Fritz, filed with the PTO

14   an application for the mark CAVEMAN DIET, indicating that the first use of the mark

15   was in August 2002 and the first use of the mark in commerce was on August 24, 2005.

16   Application, Exs. A & B to Fritz Decl. (docket nos. 105-1 & 105-2).

17          Defendant filed its own applications for the mark CAVEMAN FOODS on March

18   16, 2011, and for the mark CAVEMAN JERKY on May 13, 2011.  *See* Certificates for

19   Registration Nos. 4,565,451, 4,863,604, and 4,831,590, Exs. I & K to Running Decl.

20   (docket nos. 108-9 & 108-11); *see also supra* note 3.  Defendant's first use of those

21   marks in commerce was on or before May 2011.  Running Decl. at ¶¶ 9–11 (docket no.

22   108).  During that same time period, Fritz executed an assignment transferring to

23

ORDER - 4

1    Defendant all rights in the mark CAVEMAN DIET and several other CAVEMAN marks,

2    which was made retroactively effective on March 9, 2011, and which was recorded with

3    the PTO on April 19, 2011. *Id.* at ¶¶ 6–7.

4    **C.    The Parties' Trademark Litigation**

5             Defendant's counsel contacted Plaintiff's counsel in March 2017, after Plaintiff

6    had filed trademark applications for the marks CAVEMAN KITCHEN and CAVEMAN,

7    requesting information related to Plaintiff's use of the marks.  Letter, Ex. B to Stuart

8    Decl. (C18-273, docket no. 18-3 at 6).  In April 2017, Plaintiff initiated opposition

9    proceedings with the PTO concerning certain trademark applications filed by Defendant,

10   and Defendant likewise opposed Plaintiff's pending mark applications.  Williams Decl. at

11   ¶ 2 (docket no. 113); Registration Summary, Ex. DD to Williams Decl. (docket no. 115-3

12   at 4–6); *see supra* note 3.

13            In February 2018, Plaintiff initiated an action against Defendant in this Court,

14   Case No. C18-273, asserting federal statutory and state common law claims for

15   trademark infringement, a federal claim for false designation of origin, a state common

16   law claim for unfair competition, claims for cancellation of trademark registrations, and

17   claims for declaratory relief.  Complaint (C18-273, docket no. 1).  Defendant moved to

18   dismiss the action under Federal Rule of Civil Procedure 12(b) on the ground that

19   Plaintiff did not own the mark CAVE MAN KITCHENS when it initiated the lawsuit.

20   Motion to Dismiss (C18-273, docket no. 13).  On May 30, 2018, while Defendant's

21   motion to dismiss was pending, Plaintiff secured the previously mentioned *nunc pro tunc*

22   assignment of the registered mark CAVE MAN KITCHENS.  Assignment, Ex. A to

23

1   Stuart Decl. (C18-273, docket no. 18-3 at 2–3).  This Court ruled that the attempted

2   assignment failed to establish that Plaintiff had legal title to the mark at the time it

3   initiated the action on February 22, 2018, and that Plaintiff therefore lacked standing to

4   assert any claims brought under the Lanham Act.  Order (C18-273, docket no. 23 at 2–3).

5   The Court dismissed the federal claims without prejudice and declined to exercise

6   supplemental jurisdiction over the remaining state law claims.  *Id*. at 3–4.

7          On August 28, 2018, Plaintiff's complaint was dismissed.  Plaintiff filed a new

8   complaint the same day, asserting the same nine causes of action as asserted in the initial

9   complaint.  *See* Complaint (docket no. 1).  Defendant filed several counterclaims,

10  including claims for declaratory relief, cancellation of trademark registrations, and false

11  registration.  Amended Answer at ¶¶ 35–87 (docket no. 33).  Defendant now moves for

12  summary judgment on Plaintiff's nine causes of action.

13  **Discussion**

14  **A.     Summary Judgment Standard**

15         The Court shall grant summary judgment if no genuine issue of material fact exists

16  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

17  The moving party bears the initial burden of demonstrating the absence of a genuine issue

18  of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if

19  it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty*

20  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

21  adverse party must present affirmative evidence, which "is to be believed" and from

22  which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the

23

record taken as a whole could not, however, lead a rational trier of fact to find for the

non-moving party on matters as to which it will bear the burden of proof at trial,

summary judgment is warranted.  *See Matsushita Elec. Indus.  Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B.     Federal and State Claims for Trademark Infringement**

      **1.        Federal Claim for Trademark Infringement under 15 U.S.C. § 1114
(Count I)**

This Court previously concluded that Plaintiff lacked standing to bring a

trademark infringement claim under § 1114 because it was not the registrant or the

assignee of the registered mark CAVE MAN KITCHENS when it originally sued

Defendant in February 2018.  Order (C18-273, docket no. 23 at 2–4); *see* 15 U.S.C.

§ 1114 (providing that a civil action may be brought "by the registrant" of the mark); *id.*

at § 1127 (defining "registrant" to include the "assigns of such . . . registrant"). Plaintiff

now argues that when it filed this action on August 28, 2018, it was the assignee of the

registered mark based on a *nunc pro tunc* assignment executed on May 30, 2018.  *See*

Response (docket no. 121 at 12).  Defendant contends that the *nunc pro tunc* assignment

is invalid as a matter of law.

When a district court is "called upon to inquire whether a valid assignment had

actually taken place," as here, an "inquiry [is] required because only after a *valid*

assignment of trademarks does the assignee succeed to the rights of the assignor."

*Fed. Treas. Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 68 (2d Cir. 2010)

(emphasis in original); *see, e.g.*, *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 413

1    F. Supp. 3d 1032, 1042 (W.D. Wash. 2019) (concluding that no basis existed for the

2    infringement and unfair competition claims under the Lanham Act because the

3    assignment was invalid as a matter of law).  Courts have similarly cautioned that

> [p]ermitting non-owners . . . the right to sue, so long as they eventually
> obtain the rights they seek to have redressed, would enmesh the judiciary in
> abstract disputes, risk multiple litigation, and provide incentives for parties
> to obtain assignments in order to expand their arsenal and the scope of
> litigation.

7    *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996) (quoting

8    *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del.

9    1995)).  For the following reasons, the Court concludes that the *nunc pro tunc* assignment

10   at issue here is invalid as a matter of law.

a.    **The *nunc pro tunc* assignment did not retroactively assign rights in a registered mark based on an earlier oral agreement.**

12   The Lanham Act recognizes that registered marks are assignable with the goodwill

13   of the business in which the mark is used, but expressly requires that assignments "be by

14   instruments in writing duly executed."  15 U.S.C. §§ 1060(a)(1), 1060(a)(3); *see*

15   3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:11 (5th

16   ed. 2020 update) [hereinafter "*McCarthy*"]; *see also Gaia Techs.*, 93 F.3d at 777–80.

17   Plaintiff does not dispute that the *nunc pro tunc* assignment, executed on May 30,

18   2018, was the first writing that purported to transfer ownership of the registered mark

19   CAVE MAN KITCHENS from Dissolved Cave Man Kitchens to Plaintiff.  *See* Response

20   (docket no. 121 at 12–14); *see also* Roseanna Decl. at ¶¶ 5–8 (C18- 273, docket no.

21   18-1).  That retroactive assignment is ineffective because the document merely reflects

23

1   that an alleged *oral* agreement was made on June 6, 2011, not that any type of writing

2   was executed on that date.  *See* Patricia Dep., Ex. A to Durrance Decl. (docket no. 122-1

3   at 6) (former president testified that, on or around June 6, 2011, she "*said* [to Roseanna], .

4   . . It's yours now . . . . go for it.") (emphasis added).[4]  "[T]he relevant statutes require an

5   assignment of . . . registered trademarks to be in writing."  *Gaia Techs.*, 93 F.3d at 780

6   (concluding that a *nunc pro tunc* assignment reflecting an earlier oral agreement between

7   the parties was insufficient to confer standing retroactively); *see* 15 U.S.C. § 1060(a)(3).

8        Plaintiff's evidence merely shows that a written assignment was executed on

9   May 30, 2018, and not any earlier.  As a matter of law, any alleged oral agreement in

10  2011 could not transfer to Plaintiff any ownership rights in the registered mark.

11              **b.    The *nunc pro tunc* assignment is invalid.**

12       Defendant also contends that the May 30, 2018, assignment is invalid because

13  (i) the parties never reached an oral agreement on or around June 6, 2011, and (ii) the

14  dissolved corporation's board of directors never voted or took formal action to assign the

15  mark, as required under state law.  *See* Motion to Dismiss (docket no. 103 at 7–10).

16       No dispute exists that when the former president of Dissolved Cave Man Kitchens

17  purported to execute the written assignment, the corporation had been administratively

18  dissolved for more than seven years.  Roseanna Decl. at ¶¶ 5, 8 (C18- 273, docket no.

19  18-1).  Similarly, no dispute exists that the former president acted alone in assigning the

20

21  _____

22  [4] As explained in Section B(2), *infra*, the evidence is also insufficient to create a genuine dispute of fact material to whether the parties executed a valid oral assignment on or around June 6, 2011.

23

1    mark to Plaintiff, failing to seek the approval of any other former director.  Patricia Dep.,

2    Ex. H to Williams Decl. (docket no. 113-8 at 8–9) (when asked whether she "ever

3    talk[ed] to any of the directors of Dissolved Kitchens about giving Rose[anna] the right to

4    use the name Cave Man Kitchens," Patricia testified that she did not "recall ever having a

5    discussion about" that).

6         Under Washington law, "[a] dissolved corporation . . . may not carry on any

7    business except that appropriate to wind up and liquidate its business affairs"; and any

8    "[c]orporate actions to be approved by a [dissolved] corporation . . . may be approved by

9    the corporation's board of directors and, if required, by its shareholders."

10   RCW 23B.14.050(1), (5); *see Equipto Div. Aurora Equip. Co. v. Yarmouth*, 134 Wn.2d

11   356, 365, 950 P.2d 451 (1998) ("[A] corporation's existence does continue after

12   dissolution, albeit in a very narrow, restricted sense.").  No evidence indicates that the

13   former president assigned Plaintiff the mark in order to "wind up" or "liquidate" the

14   business affairs of the corporation seven years after its dissolution, or that the former

15   president was authorized to do so.  *See* Patricia Dep., Ex. H to Williams Decl. (docket

16   no. 113-8 at 8–9).[5]   The Court concludes that the *nunc pro tunc* assignment, executed on

17   May 30, 2018, is invalid as a matter of law.[6]  Plaintiff therefore lacks standing to bring a

18

19   [5] The Court also notes that Dissolved Cave Man Kitchens never petitioned to have the dissolution
20   continued, *see* RCW 23B.14.050(4), and that when its former president purported to execute the written
     assignment, the corporation could not possibly have been reinstated, *see* RCW 23.95.615(1).

21   [6] To establish ownership of the registered mark, Plaintiff also appears to rely on evidence that its
22   president, Roseanna, already "owned" the registered mark because she was a 20 percent shareholder of
     Dissolved Cave Man Kitchens.  *See* Response (docket no. 121 at 13, 15).  Roseanna's status as a former
     shareholder, however, does not raise genuine issues of fact material to whether she or Plaintiff already

23

ORDER - 10

1  claim under § 1114.  Count I for federal trademark infringement is DISMISSED with

2  prejudice.

3  **2.      State Common Law Claim for Trademark Infringement (Count III)**

4          Absent a valid assignment of a registered mark, a plaintiff may still bring a

5  Washington common law claim for trademark infringement.  *See* RCW 19.77.900

6  (recognizing "rights or the enforcement of rights in trademarks acquired in good faith at

7  common law prior to registration"); *see also McCarthy* at § 18.4 (a common law

8  assignment "may be proven by the clear and uncontradicted oral testimony of a person in

9  a position to have actual knowledge" (citing *TMT N. Am., Inc. v. Magic Touch GmbH*,

10  124 F.3d 876, 884 (7th Cir. 1997))).

11          Plaintiff's evidence here, however, is insufficient to create triable issues of fact on

12  whether a valid oral assignment was made on or around June 6, 2011, or whether Plaintiff

13  had common law priority before that date.  Roseanna, Plaintiff's president, repeatedly

14  testified that she never "asked permission from" any of Dissolved Cave Man Kitchens'

15  former directors to use the name Cave Man Kitchens, and that no one ever "assign[ed]

16  her rights" to use that name.  Roseanna Dep., Ex. A to Williams Decl. (docket no. 113-1

17  at 85, 96); *see id.* at 96 (when asked whether "Dissolved Kitchens in 2011 or 2012

18  assigned [her] the rights to the trademark registration for Cave Man Kitchens," Roseanna

19  testified that she "didn't ask them" and that "they didn't require it" because Roseanna

20

21  owned the registered mark.  *See Monorail Car Wash, Inc. v. McCoy*, 178 U.S.P.Q. 434 (T.T.A.B. 1973)

22  ("the fact that an individual is the controlling shareholder and principal officer of a corporation, is not, in
   and of itself, sufficient to establish ownership in a mark which only a corporation has used").

23

ORDER - 11

1   already "owned" the name as a "partner of 20 percent"); *id.* at 96–97 (when asked

2   whether "the directors of Dissolved Kitchens ever vote[d] to assign the registration to

3   Cave Man Kitchens," Roseanna testified "[n]ope"); *id.* at 99 (Roseanna testified "there

4   was no formal . . . meeting and talking about it . . . . they knew I had purchased it, nobody

5   ever disputed it.  They just let me have it.  I guess that would be they assigned it over to

6   me.").[7]

7           Patricia, Dissolved Cave Man Kitchens' former president, likewise testified that

8   she and Roseanna never "talked about trademark in general" and that Roseanna "didn't

9   have to ask [Patricia's] permission" to use it.  *See* Patricia Dep., Ex. A to Durrance Decl.

10  (docket no. 122-1 at 4–5).  In an attempt to create genuine disputes of fact, Plaintiff relies

11  on Patricia's later sworn statements that she told Roseanna on or around June 6, 2011,

12  that Cave Man Kitchens is "yours now . . . .  go for it. . . .  Whatever you can do, it's

13  open, it's ready, and you got to keep it going."  *Id.* at 6.  That sworn statement is not only

14  ambiguous and internally inconsistent, it is completely at odds with the fact that, by

15  June 6, 2011, Patricia had already transferred ownership of Dissolved Cave Man

16  Kitchens to Marlis (Patricia's daughter and Roseanna's niece), who was operating the

17  restaurant under the name "CK Smokehouse" or "Caveman Kitchens" Smokehouse.

18

19  ──────────────

20  [7] Roseanna also testified that the directors of Dissolved Cave Man Kitchens told her, either in 2008 or
    2011, that Roseanna would "have to pay them $250,000" to "open another Cave Man Kitchens,"
    Roseanna Dep., Ex. A to Williams Decl. (docket no. 113-1 at 76), which was corroborated by an unsworn

21  letter authored by Roseanna, *see* Letter, Ex. J to Williams Decl. (docket no. 113-10 at 3).  Roseanna never
    paid Dissolved Cave Man Kitchens that amount because she "already own[ed] it."  Roseanna Dep., Ex. A

22  to Williams Decl. (docket no. 113-1 at 76).

23

1   Marlis Dep., Ex. D to Williams Decl. (docket no. 113-4 at 4–7); Roseanna Decl. at ¶ 6

2   (C18-273, docket no. 18-1).

3          Plaintiff also relies on Roseanna's declaration, stating that none of Dissolved Cave

4   Man Kitchens' former directors ever "contested" Plaintiff's use of the name, and that the

5   former president executed a written assignment on May 30, 2018.  Roseanna Decl. at ¶ 8

6   (C18-273, docket no. 18-1).  That declaration, however, is silent on whether Dissolved

7   Cave Man Kitchens' former president intended to transfer ownership of the mark to

8   Plaintiff on or around June 6, 2011.

9          The Court concludes that *any* common law right in the mark originates with

10  *Plaintiff's* initial use of the mark—and not Dissolved Cave Man Kitchens' initial use—

11  which commenced at some point *after* Plaintiff was incorporated on June 6, 2011.

12  Roseanna Decl. at ¶ 7 (C18-273, docket no. 18-1).  The Court further concludes that no

13  genuine disputes of fact material exist to whether Defendant's applications for, use of,

14  and registration of the marks CAVEMAN FOODS and CAVEMAN JERKY conferred

15  nationwide priority *before* June 6, 2011.[8]  *See* Registration Certificates, Exs. I & K to

16  Running Decl. (docket nos. 108-9 & 108-11) (conferring nationwide priority for both

17  marks by May 13, 2011); Running Decl. at ¶¶ 9–11.  Plaintiff therefore cannot establish

18  common law priority as a matter of law.  *See* RCW 19.77.900; *see also Miller v. Glenn*

19  *Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) (noting that a state common law

20

21  [8] Plaintiff argues that the assignment of the mark CAVEMAN DIET to Defendant in 2011 is "rife with
    genuine issues of material fact," but it does not dispute that Defendant filed applications for and used the
22  registered marks at issue by May 2011.  *See* Response (docket no. 121 at 18).

23

ORDER - 13

1    mark is acquired by the use of a mark continuing from a date *prior to* the alleged

2    infringer's date of registration).  Count III for common law trademark infringement is

3    DISMISSED with prejudice.

4    **C.      Federal Claims for Cancellation of Trademark Registrations (Counts V, VI and VII)**

5

6            Plaintiff also seeks cancellation of Defendant's registered marks CAVEMAN

7    FOODS and CAVEMAN JERKY.  *See* 15 U.S.C. § 1064 (providing that a petition to

8    cancel a registration of a mark may be filed "by any person who believes that he is or will

9    be damaged . . . by the registration of a mark"); *see Star-Kist Foods, Inc. v. P.J. Rhodes*

10   *& Co.*, 735 F.2d 346, 349 (9th Cir. 1984) ("While '[n]o absolute test can be laid down for

11   what must be proved,' a cancellation petitioner must show he is 'more than an

12   intermeddler' but rather has a personal interest, and that there is a 'real controversy

13   between the parties.'" (internal citations omitted)).

14           As explained in Section B, *infra*, however, absent a valid assignment of Dissolved

15   Cave Man Kitchens' registered or common law marks, any priority associated with

16   Plaintiff's common law mark originated on or after its incorporation on June 6, 2011.

17   Before plaintiff accrued any right in CAVE MAN KITCHENS or similar marks,

18   Defendant filed applications for, and started using, the registered marks at issue,

19   CAVEMAN FOODS and CAVEMAN JERKY, and the subsequent registration of those

20   marks conferred on Defendant nationwide priority as of May 13, 2011.  *See* Registration

21   Certificates, Exs. I & K to Running Decl. (docket nos. 108-9 & 108-11); Running Decl.

22   at ¶¶ 9–11.  Counts V, VI, and VII are therefore DISMISSED with prejudice.

23

ORDER - 14

1

2    **D.    Declaratory Relief (Count VIII)**

3          Plaintiff is not entitled to a declaratory judgment of its right to maintain

4    registration of the mark CAVE MAN KITCHENS, which it does not own.  *See supra*

5    Section B(1)*; see also* 15 U.S.C. § 1119.  Count VIII is DISMISSED with prejudice.

6    **E.    Federal Statutory Claim for False Designation of Origin (Count II), State
     Common Law Claim for Unfair Competition (Count IV), and Claim for
7    Declaratory Judgment (Count IX)**

8          The Court defers ruling on Defendant's motion for summary judgment on

9    Counts II, IV, and IX and directs Plaintiff to show cause why Counts II, IV, and IX

10   should not be dismissed with prejudice in light of this Order.  Plaintiff's allegations

11   supporting Counts II, IV, and IX appear to rely solely on ownership rights arising from

12   the *nunc pro tunc* assignment of Dissolved Cave Man Kitchens' registered mark,

13   executed on May 30, 2018, which is invalid as a matter of law.  *See* Complaint at ¶¶ 34–

14   38, 43–46.  Plaintiff's show-cause responseshall be filed on or before Monday,

15   December 7, 2020.  No reply shall be filed unless requested by the Court.  The pending

16   motion for summary judgment, docket no. 103, is re-noted for December 7, 2020.

17

18

19

20

21

22

23

ORDER - 15

1 | **Conclusion**

2 | For the foregoing reasons, the Court ORDERS:

3 | (1)    The Motion Requesting Judicial Notice, docket no. 112, is GRANTED.

4 | *See supra* note 1;

5 | (2)    The Motion for Summary Judgment, docket no. 103, is GRANTED in part

6 | and DEFERRED in part.  Plaintiff is DIRECTED to file a show-cause response on or

7 | before Monday, December 7, 2020, and the motion is RENOTED to December 7, 2020.

8 | (3)    The Clerk is directed to send a copy of this Order to all counsel of record.

9 | IT IS SO ORDERED.

10 | Dated this 23rd day of November, 2020.

11 | 

12 | THOMAS S. ZILLY
United States District Judge

ORDER - 16