1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

| | |
|---|---|
| CAVE MAN KITCHENS INC.,<br><br>          Plaintiff and Counter<br>          Defendant,<br><br>   v.<br><br>CAVEMAN FOODS LLC,<br><br>          Defendant and Counter<br>          Claimant. | C18-1274 TSZ<br><br>ORDER |

13

14

15

16

17

THIS MATTER comes before the Court on a motion for summary judgment ("Motion"), docket no. 139, and motions in limine, docket no. 148, filed by Plaintiff and Counter Defendant Cave Man Kitchens Inc. ("Plaintiff").[1]  Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

18

19

20

21

22

23

---

[1] Defendant and Counter Claimant Caveman Foods LLC also filed an unopposed motion to seal, docket no. 142.  The Court finds compelling reasons to seal the proprietary business information contained in the unredacted version of the declaration of Jeff Hansberry, docket no. 143, and hereby GRANTS the motion to seal, docket no. 142.

ORDER - 1

**<u>Background</u>**[2]

In February 2018, Plaintiff, a Washington corporation named Cave Man Kitchens Inc.,[3] brought a trademark infringement action against Defendant and Counter Claimant Caveman Foods LLC ("Defendant"), which owns certain trademarks registered with the United States Patent and Trade Office ("USPTO"), including CAVEMAN FOODS, CAVEMAN DIET, and CAVEMAN JERKY.  *See* Compl. (Case No. C18-273, docket no. 1).  While that case was pending, in May 2018, Plaintiff's principal, Roseanna Donley, purported to obtain an assignment of another federally registered trademark, CAVE MAN KITCHENS, from a corporation that was dissolved in April 2011.  The dissolved corporation was also a Washington corporation named Cave Man Kitchens Inc. ("Dissolved Cave Man Kitchens") and was located at the same business location as Plaintiff's current location.  Dissolved Cave Man Kitchens was founded by Donley's father, and, before its dissolution, was operated by Donley's family members and was partially owned by Donley.  *See* Donley Decl. at ¶¶ 3–13 (docket no. 2–3).  Because Plaintiff did not own the mark at the time it initiated Case No. C18-273, the Court dismissed the federal claims without prejudice for lack of standing and declined to exercise supplemental jurisdiction over the state law claims.  Order (Case No. C18-273, docket no. 23).

---

[2] Because the parties are familiar with the facts and procedural history, the Court only briefly recites the relevant background information in this Order.  *See* Orders (docket nos. 128 & 131) (summarizing the relevant facts).

[3] Plaintiff is a Washington corporation formed in June 2011 and has the Washington Unified Business Identifier ("UBI") Number 603118420.  This entity is to be distinguished from a separate, now dissolved Washington corporation with the exact same name, Cave Man Kitchens, Inc., which was formed in November 1981 and has the UBI Number 600625485.  *See* Adams Decl., Exs. U & V (docket nos. 147-21 & 147-22).

ORDER - 2

On the same day that the initial action was dismissed, August 28, 2018, Plaintiff refiled its complaint asserting the same claims; Defendant subsequently asserted counterclaims.  *See* Compl. (docket no. 1); Am. Answer & Countercl. (docket no. 33). After Defendant moved for summary judgment, the Court ruled, in two separate orders, that:  (i) Plaintiff never received a valid assignment of the registered mark CAVE MAN KITCHENS and thus does not own it; (ii) Plaintiff does not have any common law rights in the mark CAVE MAN KITCHENS that predate its formation in June 2011; and (iii) Defendant's rights in the registered marks CAVEMAN FOODS and CAVEMAN JERKY, based on its application for and use of these marks in May 2011, are senior to any common law rights that Plaintiff might have in the mark CAVE MAN KITCHENS. *See* Orders (docket nos. 128 & 131).  The Court dismissed all of Plaintiff's claims with prejudice, leaving only defendant's counterclaims.  *See id.*

Defendant asserted eight counterclaims.  The first four counterclaims seek declaratory judgment confirming the validity, priority, and enforceability of the registered marks:  (I) CAVEMAN FOODS (Registration No. 4,565,451) for use with jerky, (II) CAVEMAN DIET (Registration No. 3,068,863) for use with dietary foods supplements, (III) CAVEMAN FOODS (Registration No. 4,863,604) for use with dietary foods supplements, and (IV) CAVEMAN JERKY (Registration No. 4,841,590) for use with jerky.  The fifth counterclaim seeks declaratory judgment confirming that Defendant's use of the registered marks CAVEMAN FOODS, CAVEMAN DIET, and CAVEMAN JERKY does not infringe, does not constitute unfair competition, and does not violate any of Plaintiff's federal or state statutory or common law rights.  The sixth and seventh counterclaims seek cancellation of the registered mark CAVE MAN

KITCHENS (Registration No. 3,222,887) on the ground of (VI) abandonment and (VII) fraud pursuant to 15 U.S.C. §§ 1064 and 1119.  The eighth counterclaim asserts civil liability for Plaintiff's false or fraudulent registration of that mark pursuant to 15 U.S.C. § 1120.

In February 2021, the parties filed a stipulation and proposed order, docket no. 134, stipulating that the Court may enter judgment in favor of Defendant and against Plaintiff on three of Defendant's counterclaims (Counts I, III, & V).  The parties also stipulated that the Court may dismiss without prejudice Defendant's remaining counterclaims (Counts II, IV, VI, VII, & VIII), contingent on "allowing Defendant to re-file those claims in an amended counterclaim in the event any portion of Plaintiff's claims survive appeal and there is further litigation in" this Court.  Stip. & Prop. Order (docket no. 134 at 3).  The Court approved the parties' stipulation to enter judgment on three of Defendant's counterclaims, but it declined to enter a partial judgment in favor of Defendant, as the parties provided no basis for the Court to make the certification required by Federal Rule of Civil Procedure 54(b).  *See* Minute Orders (docket nos. 135 & 137).  The Court also declined to dismiss Defendant's five remaining counterclaims conditioned on Defendant's ability to keep them "on ice" pending Plaintiff's appeal from a partial judgment.  *See* Minute Order at ¶ 1 (docket no. 135); *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1066 (9th Cir. 2002) (concluding that such actions attempt to "circumvent[] the final judgment rule and arrogat[e] to the parties [this Court's] gatekeeping role").  The Court set a jury trial for September 20, 2021, to resolve the remaining counterclaims.  *See* Minute Order (docket no. 138).  Plaintiff now moves

for summary judgment, *see* docket no. 139, and to exclude certain evidence at trial,

docket no. 148.[4]

## Discussion

### 1.    Summary Judgment Standard

The Court shall grant summary judgment if no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To survive a

motion for summary judgment, the adverse party must present affirmative evidence,

which "is to be believed" and from which all "justifiable inferences" are to be favorably

drawn.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986).  When the

record, taken as a whole, could not, however, lead a rational trier of fact to find for the

---

[4] The Court DENIES Plaintiff's motion in limine, docket no. 148, to exclude the testimony of Defendant's damages witnesses or any evidence of "lost opportunity" damages.  The first purported damages witness, Defendant's attorney Michael Adams, will not participate as a trial witness, rendering moot Plaintiff's motion to preclude Adams from testifying at trial.  *See* Def.'s Resp. to Pl.'s Mot. in Limine (docket no. 151 at 4).  Defendant's other damages witness, Defendant's Chief Executive Officer ("CEO") Jeff Hansberry, intends to testify on matters that are "rationally based on [his own] perception," *see* Fed. R. Evid. 701(a), as Hansberry has personal knowledge of Defendant's business dealings, including the failed business negotiations and resulting damages at issue here.  *See* Hansberry Decl. at ¶¶ 7–13 (docket no. 143).  Despite Plaintiff's argument to the contrary, courts do not require a party to prove damages solely through expert witnesses.  *See Hot Stuff Foods, LLC v. Houston Cas. Co.*, 771 F.3d 1071, 1079 (8th Cir. 2014) (finding no abuse of discretion where district court admitted the lay testimony on damages of a company's president due to their "intimate knowledge of [the company's] operations"); *see also HSS Enters., LLC v. Amco Ins. Co.*, No. C06-1485, 2008 WL 1787127 (W.D. Wash. Apr. 16, 2008) (concluding that, because a company's president intended to testify regarding "his personal experiences as one of the owners of a business that has suffered a loss . . . , [his] testimony qualifies as lay opinion testimony under Fed. R. Evid. 701").  Nor does Washington's "new business rule" preclude such testimony, as that rule is not applicable to Defendant, as an established business, or its theory of damages.  *See No Ka Oi Corp. v. Nat. 60 Minute Tune, Inc.*, 71 Wn. App. 844, 863 P.2d 79 (1993) (explaining that the "new business rule" applies to "*unestablished business*," because "when the business is in contemplation, but *not established*, profits that may be anticipated . . . are too speculative" (emphasis added)).  With respect to Plaintiff's separate motion to preclude Adams from either testifying or participating at trial, docket no. 148, the Court DENIES as moot the motion to preclude him from testifying and DENIES the motion to preclude him from participating at all.

non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted.  *See Matsushita Elec. Indus.  Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2. Defendant's Counterclaims Seeking Declaratory Judgment (Counts I–V)

Plaintiff argues that, because the Court has already ruled that Plaintiff cannot prevail as a matter of law on its claims against Defendant, *see* docket nos. 128 & 131, there is no longer any actual controversy between the parties.  The Court is not persuaded.  The Court has made no rulings with respect to one of Defendant's registered marks, CAVEMAN DIET, as Plaintiff did not plead any allegations suggesting that the mark was invalid, assert any claim challenging that mark, or assert abandonment as an affirmative defense to Defendant's counterclaim seeking declaratory judgment confirming the validity, priority, and enforceability of that mark.  *See* Compl. at ¶¶ 47–79 (docket no. 1); Pl.'s Answer to Def.'s Am. Answer (docket no. 37 at 9); Orders (docket nos. 128 & 131).  With respect to the issues that the Court's prior orders did resolve, Plaintiff has stated that it intends to appeal those orders, docket nos. 128 & 131, and reassert its claims on remand, assuming any of them survive appellate review.  *See* Pl.'s Mot. (docket no. 139 at 4); *cf. Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 (2d Cir. 2011) (concluding there was no actual controversy after plaintiff voluntarily dismissed its claims with prejudice and signed a covenant not to sue defendant).  The Court concludes that "there is a substantial controversy[] between the parties having adverse legal interests" and "of sufficient immediacy and reality," which might "warrant the issuance of a declaratory judgment" in favor of Defendant.  *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Although the case-or-controversy requirement is satisfied here, the Court concludes that four of five of Defendant's counterclaims for declaratory relief, namely Counts I, II, III, & IV, are overbroad and that Defendant is not entitled to such declaratory relief on the present record.[5]  Defendant seeks declaratory judgment confirming the "validity, priority, and enforceability" of the registered marks CAVEMAN FOODS (two separate marks), CAVEMAN DIET, and CAVEMAN JERKY.  *See* Am. Answer & Countercl. at ¶¶ 39, 44, 49, & 54 (docket no. 33).  Based on that broad language, Defendant apparently seeks a declaration that its marks are valid vis-à-vis the entire world—as opposed a declaration consistent with the Court's more limited ruling that Defendant's rights in the registered marks CAVEMAN FOODS and CAVEMAN JERKY are senior to any common law rights that Plaintiff might have in its own mark, CAVE MAN KITCHENS.  *See* Orders (docket nos. 128 & 131).  Defendant, however, has not (and cannot) present evidence that its marks are valid, have priority, and are enforceable with respect to *every other person* who believes that he or she is or will be damaged by the registration of Defendant's marks.  In *Falcon Lock Co. v. Best Universal Lock Co.*, 362 F.2d 221 (9th Cir. 1966), the Ninth Circuit rejected a similarly broad declaratory judgment, which was "general in terms" and could have been read "as encompassing situations other than that which the record disclose[d]."  *Id.* at 222.  Indeed, the Court is not aware of any case, and Defendant has cited none, in which a court has granted the type of sweeping declaratory relief that Defendant seeks here.  *See,*

---

[5] The Court previously approved the parties' stipulation to enter judgment in favor of Defendant on two of these counterclaims (Counts I & III).  *See* Minute Orders (docket nos. 135 & 137).  In light of Plaintiff's motion for summary judgment, however, the Court now reconsiders its prior approval of the parties' stipulation with respect to Counts I & III, for the reasons stated in this Order.

ORDER - 7

*e.g.*, *Kerzner Int'l Ltd. v. Monarch Casino & Resort, Inc.*, 675 F. Supp. 2d 1029, 1050 (D. Nev. 2009) (denying in part defendant's counterclaim for declaratory judgment that its state-registered trademark was "valid and enforceable," because that state registration did not "necessarily entitle [defendant] to use the [] mark throughout" the state, as plaintiff might have "federal rights that would preempt any state rights").

Moreover, the Court has largely granted the relief that Defendant seeks, based on the Court's earlier determination that Defendant's rights in the registered marks CAVEMAN FOODS and CAVEMAN JERKY, based on its application for and use of these marks in May 2011, is senior to any common law rights that Plaintiff might have acquired in the mark CAVE MAN KITCHENS after its formation in June 2011. *See* Orders (docket nos. 128 & 131). The parties have further stipulated, *see* docket no. 134, to entering a judgment in favor of Defendant and against Plaintiff on its counterclaim seeking declaratory judgment that Defendant's use of the registered marks does not infringe, does not constitute unfair competition, and does not violate any rights of Plaintiff under the statutory or common law (Count V), *see* Am. Answer & Countercl. at ¶ 61 (docket no. 33). The Court continues to approve that particular stipulation.[6] *See* Minute Orders (docket nos. 135 & 137). To the extent that Defendant seeks even broader declaratory relief, the Court cannot grant such relief.

---

[6] Although Plaintiff stipulated to an entry of judgment in favor of Defendant on this counterclaim (Count V), *see* docket no. 134, it now apparently attempts to retract that stipulation by arguing that Defendant has abandoned the mark CAVEMAN DIET, suggesting that Defendant's use of the mark violates Plaintiff's common law rights in the mark CAVE MAN KITCHENS. *See* Pl.'s Mot. (docket no. 139 at 8). The Court concludes that Plaintiff has waived this abandonment argument by failing to plead any allegations, claims, or affirmative defenses related to the mark CAVEMAN DIET and by stipulating that the Court could enter judgment in favor of Defendant on the non-infringement counterclaim (Count V). *See* Compl. (docket no. 1); Pl.'s Answer to Def.'s Am. Answer (docket no. 37); Stip. (docket no. 134).

ORDER - 8

Accordingly, with respect to Counts I, II, III, & IV of Defendant's counterclaims, which seek to confirm the validity, priority, and enforceability of Defendant's registered marks CAVEMAN FOODS, CAVEMAN DIET, and CAVEMAN JERK, the Court GRANTS Plaintiff's motion for summary judgment and hereby DISMISSES with prejudice these counterclaims.  With respect to Count V of Defendant's counterclaims, the Court APPROVES the parties' stipulation to enter judgment in favor of Defendant and against Plaintiff on this counterclaim.

The Court DECLARES, as a matter of law, that the marks CAVEMAN FOODS, CAVEMAN DIET, and CAVEMAN JERKY do not infringe Plaintiff's federal or state statutory or common law rights, do not constitute unfair competition with respect to Plaintiff, and do not violate any of Plaintiff's statutory or common law rights in the mark CAVE MAN KITCHENS.

### 3. Defendant's Counterclaim for Cancellation of a Registered Mark for Abandonment (Count VI)

Plaintiff next argues that Defendant cannot prevail on its counterclaim for cancellation of the registered mark CAVE MAN KITCHENS based on abandonment because Plaintiff does not own the registered mark.  *See* Reply (docket no. 149 at 9–10). The Court agrees.  Plaintiff cannot abandon what it does not own.  *See* Orders (docket nos. 128 & 131).  Plaintiff is not the proper defendant with respect to this counterclaim. *See Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1286 (N.D. Cal. 1996) (concluding "[t]he owner of the trademark is the only proper defendant" in an action for cancellation of that trademark); *see also* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:19 (5th ed. 2021 update) [hereinafter "McCarthy"] ("Even if the issue is one of ownership of the mark by the purported

ORDER - 9

1
2
3

assignee, 'abandonment' is over-kill" because "an invalid assignment passe[s] no rights in the mark to the 'assignee,'" and the invalid assignment merely affects the assignee's "priority of use date").  This counterclaim (Count VI) is DISMISSED with prejudice.

4

### 4.    Defendant's Counterclaims for Plaintiff's Fraud on the USPTO (Counts VII & VIII)

5
6
7
8
9
10

Plaintiff also argues that it is entitled to summary judgment on Defendant's counterclaim for cancellation of the registered mark CAVE MAN KITCHENS based on Plaintiff's fraud on the USPTO under §§ 1064 and 1119 (Count VII), and Defendant's counterclaim for false or fraudulent registration under § 1120 (Count VIII).  *See* Pl.'s Reply (docket no. 149 at 11–14).  In contrast, Defendant argues that it is entitled to summary judgment on those counterclaims.  *See* Def.'s Resp. (docket no. 144 at 28).[7]

11
12
13
14
15
16
17
18
19
20
21

A party seeking to either cancel a trademark or recover damages on the basis of fraud on the USPTO "must adduce evidence of (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing *Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir.1990)).  "This circuit applies the clear and convincing standard to petitions to cancel trademarks for fraud on the [USPTO]." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1020 (9th Cir. 2018).  "Clear and convincing evidence requires greater proof than

22
23

[7] Although Defendant did not file a motion for summary judgment, it argues in its response to Plaintiff's Motion that it is entitled to summary judgment. *See* Def.'s Resp. (docket no. 144 at 28).  The Court therefore treats the relevant arguments in the response brief as a cross-motion for summary judgment.

preponderance of the evidence," and "[t]o meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that [the asserted factual contentions are] highly probable.'"  *Id.* (citation omitted).

When registering a mark with the USPTO, an applicant (in this case, Donley, on behalf of Plaintiff) is required to verify that he or she "believes that he or she, or the juristic person [on] whose behalf he or she makes the verification, [is] the owner of the mark sought to be registered."  15 U.S.C. § 1051(a)(3)(A). The application "verification is phrased in terms of a subjective belief," meaning "it is difficult to prove objective falsity and fraud" and "[t]here is no fraud so long as the person signing the verification has an honestly held, good faith belief."  6 McCarthy at § 31:76; *see Hokto Kinoko*, 738 F.3d at 1098 (concluding the defendant could not satisfy the scienter standard because it "put forth no evidence suggesting that the false statement . . . was anything other than the result of a simple mistake," and it "adduced no evidence that [the plaintiff] *knew* of the misstatement . . . or *intended to defraud* the USPTO" (emphases added)).

In this case, Defendant asserts that Plaintiff defrauded the USPTO when it filed two declarations in connection with trademark registration renewal applications, filed on March 27, 2013, and March 29, 2016, which identified Plaintiff's corporation, "Cave Man Kitchens, Inc.," as the "owner" of the trademark registration, and were signed by Donley, as the owner's "President."  *See* Renewal Applications, Ex. Z to Adams Decl. (docket no. 147-26 at 10, 20).  According to Defendant, Plaintiff's principal, Donley, knew that, in fact, Dissolved Cave Man Kitchens was the true owner of the registered mark.   Defendant also points to a form that Plaintiff filed with the USPTO on June 1,

2018, stating that Dissolved Cave Man Kitchens is Plaintiff's "predecessor firm." *See* Section 7 Form, Ex. AA to Adams Decl. (docket no. 147-27 at 2).

Plaintiff responds that Defendant cannot prevail on the cancellation claim under §§ 1064 and 1119 because Plaintiff does not, according to this Court, own the registered mark CAVE MAN KITCHENS.  The Court disagrees.  Although Defendant has sued the wrong defendant with respect to its cancellation claim based on *abandonment*—again, because Plaintiff cannot abandon what it does not own—Defendant has properly asserted a cancellation claim based on *fraud* against Plaintiff—because Plaintiff (or Donley, on Plaintiff's behalf) is the entity alleged to have committed fraud on the USPTO.  One need not be the registrant of a mark to commit fraud on the USPTO.  *See MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 661 (2d Cir. 2016) (affirming grant of summary judgment in favor of plaintiff on its cancellation claim based on fraud, reasoning "[e]ven setting aside the fact that [defendant] applied for the [] mark in his individual capacity despite only having acquired . . . a one-third share in the corporation that [used the mark], [defendant] could not have believed earnestly that 'no other person, firm, corporation, or association ha[d] the right to use the . . . mark'").  For similar reasons, Defendant may also bring a fraudulent registration claim under § 1120 against Plaintiff.  *See Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 966–67 (D. Nev. 2010) (reaching, albeit rejecting, the merits of plaintiff's § 1120 claim, despite plaintiff's assertion that defendant did not own the mark at issue).

Plaintiff also argues that the record indisputably demonstrates that Donley lacked the requisite knowledge or intent that her statements were false or fraudulent, which Defendant must prove by clear and convincing evidence.  *See* Pl.'s Reply (docket no. 149

at 11).  Plaintiff relies on evidence that Donley's aunt and the former president of

Dissolved Cave Man Kitchens, Patricia Hill, stated in her deposition that Plaintiff was

essentially a successor of Dissolved Cave Man Kitchens, stating:

> . . . [Donley] opened Cave Man Kitchens.  Same name, same people, same
> family, different sister [i.e., Donley].  It was [Donley's] turn to do it, and
> she took her turn and is doing it . . . I consider it our company.  I never
> considered it my company.  It's always been our company, a family
> company. . . . However, we didn't dissolve Cave Man, we just dissolved
> my business, . . . my part of it.  And [Donley] started it up again.

Patricia Hill Dep., Ex. A to Durrance Decl. (docket no. 141-1 at 4).  Plaintiff also relies

on Donley's own sworn statements:  When Donley was asked who authorized her to

execute the declarations filed in connection with the trademark registration renewal

application on behalf of Plaintiff on March 26, 2013, she stated:

> I am the owner [of the mark]. . . . I think it was owned by me.  It's
> a . . .  family mark, and we as a family own it, and I'm part of the family, so
> I own it and I . . . just reinstated it . . . paid the . . . bill on it. . . . I don't see
> there's any problem with this.

Donley Dep., Ex. C to Durrance Decl. (docket no. 141-3 at 6–7).  Plaintiff, however, fails

to account for the evidence that Donley repeatedly sought to distance Plaintiff from

Dissolved Cave Man Kitchens, and expressly disowned any responsibility for its tax

liabilities, during the relevant time period.  *See* Wash. Dep't of Revenue Letter (Nov. 13,

2015), Ex. R to Adams Decl. (docket no. 147-18 at 11) (Department agent stating that,

"[t]hough it is confusing and easy to assume [Plaintiff and Dissolved Cave Man

Kitchens] are the same or share the same liabilities, this letter is intended to dispel any

such notion"); Donley Dep., Ex. E to Adams Decl. (docket no. 147-5 at 5) (Donley

stating that she was not responsible for Dissolved Cave Man Kitchen's debts because "it

was a different UBI and it was a different business," and she had not "run it," though she stated that either she or both entities "continued to own the name").

Plaintiff's assertion that Donley had a good faith belief that she or Plaintiff owned the registered mark, through a valid assignment or otherwise, is also inconsistent with the undisputed evidence that the family members who could have properly assigned the registered mark CAVE MAN KITCHENS to Plaintiff never did so.  Instead, in 2008 or 2009, a few years after the family members had removed Donley from Dissolved Cave Man Kitchens' board of directors, the family members asked Donley to pay them $250,000 to "open another Cave Man Kitchens."  *See* Donley Dep., Ex. E to Adams Decl. (docket no. 147-5 at 9–11).  Then, in April 2011, the family members sold all of Dissolved Cave Man Kitchens' business assets, including an assignment of the business property lease, to yet a *different* family member, Marlis Hill.  *See* Real Property Lease, Ex. X to Adams Decl. (docket no. 147-24 at 2); Bill of Sale, Ex. Y to Adams Decl. (docket no. 147-25 at 3–7).  Although Marlis Hill eventually resold those business assets and assigned the business property lease to Plaintiff at some point in late 2011, *see* Donley Decl. at ¶¶ 8, 10, 12 (docket no. 140), those actions do not establish how Donley could have believed, in good faith, that the family members operating Dissolved Cave Man Kitchens ever validly assigned Plaintiff any ownership rights in the mark CAVE MAN KITCHENS, either through an oral assignment of a common law mark in June 2011, or through a written assignment of the registered mark in May 2018.  At most, Plaintiff would have obtained a "naked assignment," or an "assignment in gross," which is not a valid assignment.  *See Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969) ("[T]here are not rights in a trademark alone . . . no rights can be

transferred apart from the business with which the mark has been associated."). Moreover, to date, Plaintiff has never filed with the USPTO the purported *nunc pro tunc* assignment executed in May 2018, or any other assignment, suggesting that Donley knows that the assignment is invalid. *See* Trademark Registration History, Ex. B to Adams Decl. (docket no. 147-2 at 2).

In light of the sworn statements by Donley and Patricia Hill, that they believed that Plaintiff (or Donley) owned the registered mark—either based on Donley's ownership rights in the "family mark" or based on her former 20 percent ownership of Dissolved Cave Man Kitchens—the Court concludes that triable issues of fact might exist concerning whether Donley subjectively knew that Plaintiff was not the owner of the registered mark CAVE MAN KITCHENS when she filed documents with the USPTO in 2013, 2016, or 2018, documents stating that Plaintiff *was* the owner of the mark or its successor. *See* 6 McCarthy at § 30:71 ("Where there is reasonable doubt as to who is the owner of a mark, it is not fraud to state in the application oath that one 'believes himself, or the . . . corporation . . . to be the owner of the mark sought to be registered.'" (citation omitted)); *see also Ricks*, 727 F. Supp. 2d at 967 ("The question is not whether the statement is factually false, but whether the applicant subjectively believed it was false at the time he or she made the representation." (citing 15 U.S.C. § 1064(3))). It is for the jury to weigh this competing evidence, and to decide if Donley's and Patricia Hill's statements about what Donley knew during the relevant time period are credible. *See Anderson*, 477 U.S. at 255. Although Defendant has presented sufficient evidence to survive Plaintiff's summary judgment motion, this evidence might not rise to the "clear and convincing" level to rebut Plaintiff's evidence, which also precludes any grant of

summary judgment in favor of Defendant.  *See id.*  Notwithstanding this conclusion, the Court reserves the right, after all of the evidence is presented at trial, to enter judgment against Plaintiff on these counterclaims as to liability and to award attorneys' fees against Plaintiff, to the extent appropriate.[8]

In sum, the Court concludes that there are genuine issues of material fact as to whether Defendant can prevail on its counterclaim for cancellation of the mark CAVE MAN KITCHENS based on fraud under §§ 1064 and 1119 or on its counterclaim for fraudulent registration under § 1120.  The parties' cross-motions for summary judgment on these counterclaims (Counts VII & VIII) are DENIED, and the parties should be prepared to proceed to trial on these two remaining counterclaims.

## **<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)  Plaintiff's motion for summary judgment, docket no. 139, is GRANTED in part and DENIED in part as follows:

(a)  Plaintiff's motion for summary judgment on Counts I, II, III, and IV of Defendant's counterclaims is GRANTED, and these counterclaims are DISMISSED **<u>with prejudice</u>**;

(b)  The Court APPROVES the parties' stipulation, docket no. 134, that the Court enter judgment in favor of Defendant and against Plaintiff on Count V of Defendant's counterclaims;

---

[8] Defendant seeks attorneys' fees and costs pursuant to 15 U.S.C. § 1117.  *See* Am. Answer & Countercl. (docket no. 33 at 31).

ORDER - 16

(c)     Plaintiff's motion for summary judgment on Count VI of Defendant's counterclaims is GRANTED, and this counterclaim is DISMISSED **with prejudice**; and

(d)     Plaintiff's motion for summary judgment on Counts VII and VIII of Defendant's counterclaims is DENIED.

(2)     Defendant's unopposed motion to seal, docket no. 142, is GRANTED.  The unredacted version of the declaration of Jeff Hansberry, docket no. 143, shall remain UNDER SEAL;

(3)     Defendant's request for summary judgment, set forth in its response, docket no. 144, to Plaintiff's Motion, which the Court treats as a motion for summary judgment, is DENIED;

(4)     Plaintiff's motions in limine, docket no. 148, are resolved as follows:

(a)     The motion to exclude evidence of Defendant's damages is DENIED; and

(b)     The motion to preclude Defendant's counsel, Michael Adams, from testifying at trial is DENIED as moot, and the motion to preclude him from participating at trial is DENIED.

(5)     The case remains set for a jury trial on September 20, 2021, with the following pretrial deadlines in effect:  the agreed pretrial order, proposed voir dire, proposed jury instructions, and trial briefs are due by September 3, 2021, and the pretrial conference is set for September 9, 2021.  Only Counts VII and VIII of Defendant's counterclaims will proceed to trial.  **The two to three-day jury trial may proceed**

**remotely using the ZoomGov.com platform**.  Any objections to a remote trial shall

be filed by August 6, 2021; and

      (6)     The Clerk is directed to send a copy of this Order to all counsel of record.


IT IS SO ORDERED.

Dated this 26th day of July, 2021.

                                   Thomas S. Zilly

_____

Thomas S. Zilly
United States District Judge

ORDER - 18